Good morning, Your Honors. Laura Roche on behalf of Appellant Joel Finley. May it please the Court, this case is about an inmate who suffered prolonged and serious pain following oral surgery to extract an infected impacted wisdom tooth. Summary judgment should not have been granted when the evidence below showed that Appellee Linda Parker repeatedly denied Mr. Finley access to treatment for his dental condition and pain. Teeth have numbers in this case, not names. And you've got two teeth, numbered 3 and 32. And I'd like to talk to you about tooth number 3. What suggests deliberate indifference with respect to tooth number 3? As far as I can tell, you're suing Parker, who's a dental assistant of some kind? That's right, Your Honor. She was essentially the gatekeeper at Ironwood State Prison. And the problem I have with your tooth number 3 argument is that Parker visited Finley in his cell on March 27, 2001, but she was accompanied by Dr. Marquez. And Dr. Marquez is not a defendant in this case. He's the dentist. And he seems to have been there the entire time. They gave your client an option to have the tooth either removed or wait for a filling. And Finley decided against removing the tooth. And Marquez gave him some pain relief. And then later on it was Marquez who was involved in rescheduling some teeth work. So how does Parker come in for deliberate indifference when it looks like Dr. Marquez was the one who was really making the key decisions? Your Honor, I think the record below shows that it was Ms. Parker who apparently informed my client that he had the choice of having the tooth extracted if he wanted immediate treatment. When he was initially seen for tooth number 3, it was by Dr. Martinez, who was the dentist for Prison Yard B. She suggested that he should receive treatment for the tooth and that the tooth need not be extracted. He then proceeded to present himself to the dental sick call at the prison on two separate occasions following the visit with the dentist in March, seeking relief from pain and to be treated for the tooth, and was turned away both times by Ms. Parker. Are you saying that it was on your client's testimony that it was Parker who was the one that was calling the shots in that respect, even though Dr. Marquez actually gave treatment? Judge Schader, that is what the record reflects below. He submitted evidence that it was Ms. Parker who informed him that if he wanted immediate treatment, his only option was to have the tooth extracted. Was the dentist sitting right there at the time? It appears to be the case, Your Honor, yes. And then the dentist gave him pain medication? The record shows that he received a handful of pain pills. That was in March. He didn't receive treatment for the tooth until March. Deliberate indifference means something, not even just indifference or negligence. It means that you really have sort of a very culpable state of mind. And it looks to me on this tooth that it was just the usual stuff that you see in prison with delays, that there was no deliberate indifference. Where's the deliberate indifference? Your Honor, I'm willing to concede that the argument on tooth number three is not as strong, certainly, as the argument on tooth number 32. All right. Thank you. As we move to tooth number 32, I guess the worry that I have is that the standard of review in this situation, which Judge Trott has mentioned to some extent, is it's got to be more than negligence. And as I understand, the case law delay is not enough unless the delay causes harm. What factual evidence do I have there's harm? Your Honor, the evidence of harm is Mr. Finley's sworn declarations below that he suffered severe pain that interfered with his ability to talk and to eat. The record also reflects that he had an infection when the wisdom tooth was extracted and that he received antibiotics leading up to and at the time of the surgery. He then proceeded to visit the sick call, which is the emergency room for the prison, on five separate occasions, which I think strongly suggests that he was in real pain and that to have to suffer that pain over the course of nine months is substantial harm. Well, as I understand it, there's two real problems that we have or two real issues that you have to meet. One is that you show a serious medical need. Failure to treat could result in that. One, I mean, pain could involve that. However, the second part is that there's some kind of a purposeful act or failure to respond, that may be where you're going, causing harm to the person. My worry was trying to find facts that say harm. I mean, there's a lot of us who hate Dennis, a lot of us who don't want to go to Dennis, and we don't go even though we might have some problems with our teeth. But the harm caused is the problem. Your Honor, I think under McGuckin v. Smith, the case law in this circuit holds that simply experiencing pain is enough to constitute a serious dental need and that it is not incumbent upon a party to prove an actual dental or medical condition, only a possible one. I think that the evidence below clearly established that he was in pain and that he had at least a possible dental need following the oral surgery. Well, the question is, then, the application of the standard of review, and certainly negligence is not enough, and under Farmer v. Brennan, it's got to be somewhat equivalent to criminal recklessness, and so I'm just trying to question the harm that is in this record. That's the worry that I have. I understand, Your Honor. I think that he submitted testimony that he was in significant pain over the course of nine months. I think that that satisfies the standard under McGuckin v. Smith of pain or a possible medical need, and to withstand summary judgment, all he needed to show was that there was a genuine dispute regarding his pain or possible medical need. He did not have to establish, in fact, that he had pain or a possible medical need. Well, you know, there's another way of measuring this. After the summary judgment cases came down a number of years ago, this is quite a while now, Sandra Day O'Connor came to our court, and she was asked whether the Supreme Court really meant it when the Supreme Court said in that trilogy of cases, we want the trial judges to be able to knock cases out of the box before they waste a lot of time with jury trials on cases that really aren't going anywhere. And she said, yes. She said, we expect the district court judges to take a look at the facts, and if the facts are such, viewed in the light most favorable to the plaintiff, for example, that assuming all of those are proved in a jury trial, that you, district court judge, are then going to clock it out because it's not supported by sufficient facts, get rid of it early. So it's not just is there a dispute. It's whether these facts would support a verdict in favor of the plaintiff is what she told us. And you think these facts would support a verdict of deliberate indifference in favor of this plaintiff. Your Honor, I do. The facts below, the evidence below is that after being denied treatment for nine months, when Mr. Finley finally was seen by a dentist, a fragment was found lodged in his gum. I think having oral surgery for an infected impacted wisdom tooth and then suffering with no treatment and no access to medical care for nine months, only to then learn that there's, in fact, a fragment left behind, constitutes the kind of harm that reaches the level of a constitutional violation. Let's suppose you're right for the sake of argument. And what supports the idea that Parker was deliberately indifferent? Simply the delay in putting this off, is that it? I think it's turning him away from the sick call on five separate occasions when it was her admitted responsibility to ensure that he was seen by a dentist that day and that he received pain treatment, and that on five different occasions she refused to do that, coupled with her taunting him and saying? Tell us about the taunting. Your Honor, the taunting apparently involved her saying that she herself had had wisdom teeth extracted, that it was normal to be experiencing pain, and that the reason he couldn't handle it was that he was a man and that that's the reason God made women to have babies, is because men can't handle pain. That to me suggests that she was being callous in her treatment and deliberately refusing him treatment for reasons other than a qualified medical assessment. So men up and tough it out. Yes, Your Honor. Or women up and tough it out. As the case may be. Counselor, there is something that happens in most negligence cases in the district courts where I've sat, and that is that when the jury hears the situation that one has been injured and they hear about that situation, and then nobody ever goes to the doctor or even calls for a doctor or even initiates a sick call, the jury has a tendency to disbelieve that there's too much problem. In this instance, doesn't this indicate that Parker didn't give much sick call in this instance as to 32? I'm sorry, I'm not sure I understand the question. Well, according to Parker, Mr. Finley had not even asked for any sick call as to this pain. Your Honor, the record below, the prison dental records show that he appeared on five separate occasions. Irrespective of what Ms. Parker says, there are records, documentary records in the record, showing that he appeared on five separate occasions. And I think the reason that she says there's no record of him complaining of pain is because she kept turning him away, and so he never got to see a doctor to complain, hey, doc, I'm in pain. Well, there is a standard form, is there not, that he was to have submitted? Yes, Your Honor, and there are five of those in the record. Okay. Unless there are further questions, I'd like to reserve what time I have left for rebuttal, please. Well, I think your time's gone, but that's okay. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court. Deputy Attorney General Julie Bachman for Defendant and Appellee Linda Parker. This is a case where Mr. Finley received extensive treatment. He was seen within a 14-month period 11 times, through both the sick hall and through the routine dental care systems. And for 10 of these months, Ms. Parker was the one who got him all this care. It's hard to believe that equals deliberate indifference. Counsel, when you say hard to believe, you know, that, of course, is the reason that we have juries. When you come to the question whether it's hard to believe, aren't we required, just as would be true under Rule 50 post-trial, to apply the principle that we credit Finley's testimony where there's a dispute? Right? Well, Your Honor, I don't think there's actually a dispute here that he received all this treatment and that he. No, no, no. But how about the denial of treatment? Well, Your Honor, my understanding of the case law is that as long as there's been treatment. Treatment of? But treatment of the harm that's complained of? Well, Your Honor, as to the serious medical need, as to number 32, I believe we're talking about, the only evidence that Mr. Finley has that there was a problem is his own self-serving declaration. Self-serving is not the study or the standard for Rule 56 purposes. Self-serving is what we deal with all the time, and that's for trios of fact to make a judgment about. Well, Your Honor, if I may, under Kennedy and Chavin, implausible declarations that aren't supported by other corroborating evidence can be thrown out. But on to, I think, a more important point is that she didn't have the requisite mental state for deliberate indifference, and as well, she couldn't have caused any of his harm. She is essentially a receptionist, like a legal receptionist being sued for She's a gatekeeper. You don't appear to be able to go anywhere without Parker's approval. If you listen to this, I mean, she's like the air traffic controller. Nobody lands without Parker's involvement, it appears. I, Your Honor, I actually She didn't say, I'll talk to the dentist and see whether you can see him. She said, you're not going to see the dentist. Your Honor, I believe that, and I think the record shows that she's more akin to a receptionist at a law office. A receptionist at a law office who says you can't see the lawyer and therefore deprives the person of the opportunity to get into court, right? Well, she did allow him to see the dentist. In fact, he did see the dentist 11 times in 14 months. Ten of those months On other things. Well, I believe the record shows that he saw the dentist for tooth number 32 in November and December. So she did facilitate that. And the medical records don't show that there was any problem with tooth number 32. So just this point is that how can she develop the records in mental state if, upon review of the records, there's nothing wrong with tooth number 32? Well, what happened with 32 finally when they got around to taking care of it? What did they discover? There was nothing to discover. It had been fully extracted by Riverside County Medical Hospital in December. So what finally happened with tooth 32? It was fully extracted. There was no chip left. There was no chip left. There was no serious medical need. What do you make of these statements, you know, tough it out, that's why you men can't handle pain, in the middle of all of this, when she keeps denying him the opportunity to see a dentist? Well, in her declaration she denies it, but let's put that aside. Yeah, well, we have to. I mean, you stumbled into a real ditch when you said credibility, because as Judge Shader pointed out, credibility is for juries. I agree. But the ‑‑ excuse me, Your Honor. If, in fact, if we assume she said that, well ‑‑ Which we have to. We have to. And don't waste time trying to tell us, you know, trying to cushion things. This is a summary judgment motion. I understand, Your Honor. If we assume she did that, then, well, we don't want that to happen. We wouldn't want that to be happening. Why not? Because it shows a state of mind that you don't want medical professionals dealing with people in pain. If you went to a male doctor, for example, and the doctor said something like this to you, hey, tough it out, babe. You know, I mean, what's the matter with you women? You want to fight in wars when you can't take a little tooth pain? You go back to that person? Well, you might not want ‑‑ Would you? Would I personally? Yeah. Because you don't like that person's frame of mind, would you? If he gave me the best ‑‑ if he gave me dental care, I would go back. And that's what happened here. Well, if he said tough it out and you don't get any pain medication and you don't get to see the doctor. He did receive pain medication over and over again. He was seen on sick call a number of times. Just from November 2000 to March 2001, he's seen on sick call four times. One time, a fifth time, he was a no show. He's given medication. He's given x-rays. He's given oral hygiene instructions. I then requested something for pain and she said no. She can't prescribe. She has limited authority. So she won't let him see the person who can prescribe. I would say that the record actually reflects that he was seen. He was on continuing care by dentists. She has limited authority. How can she cause the pain or make it go away? She can't. All she can do is write down appointments and she can't even move the appointments up. And under McGuckin, if you can't even move around the appointments, there appears to be no deliberate indifference. She's getting him in there. When he comes to see her, unlike Hunt, there's no swelling. There's no bleeding. He hasn't been put on a special diet. All she has to go on is the medical records. So she signs him up for sick call. She signs him up for routine dental care. This is all she can even do. She's following departmental policies. And in terms of the qualified immunity argument, that under Dittman, following policies entitles you to qualified immunity. Would Your Honors be interested in talking about number three or, as I see my time is? Well, she took a small mirror and began looking at the area. Then she took her other hand and with her finger pulled outward on my jaw. At this point, she found a tooth fragment logged down in the said area, informing her of what she had found and proceeded to take it out using a tweezers. So that tooth fragment was in there during all the time he was complaining of pain, asking to see the dentist and asking for pain medication. Even if that's true. That's what I was getting at earlier. The tooth fragment was still in there from the extraction, and that seems to have been causing the pain. So this is not a case of phantom pain. There was a fragment left over. Even if that's true. Ms. Parker, all she can do is look at the medical records, look at him, and sign him up for appointments, which she did. You'd probably have a slam-dunk case if she hadn't told him that funny off-the-cuff, you know, tough-it-out statement, you don't get any pain medication, you don't get to see the dentist, and then months later they find a fragment lodged in there. Well, although that may be an unfortunate statement, she still got him care. Her job is just to sign people up for appointments. That's what she did. He was under the care of dentists all throughout this time. Counsel, the worst part of your particular problem in my book is we're on a summary judgment. And I appreciate that we're on a summary judgment with a higher standard of care. But as I asked counsel, he had applied for care at least five times during this period. It may not have been something if one's really in trouble, one goes every day, not waiting months or even weeks before one does something else in order to try to do something about it, which might lead to the harm problem. But we're on summary judgment. He's asked for this at least five times. And then on asking for this the five times, not only that, he has received nothing and she finds this chip afterwards. Now, isn't that enough to meet the summary judgment standard? That's the problem we have here. No, it's not. And this is why. And why. One of the elements of deliberate indifference is that she had the requisite mental state, but also that she could cause the harm. And she did not. Her job is. Wait, wait, wait. When there's delay and the delay involves the pain and the delay is caused by her, you're saying that she has caused the harm? That's what I'm saying. And this is why. She's following departmental policy. She can't move appointments around. And under McGuckin, that doesn't equal deliberate indifference. Where does it say she had no ability to go into the dentist and say, hey, I got somebody in there who says he's in a lot of pain, he's had an extraction. Can we run him to the front of the line? She's not allowed to do something like that? No. All she can do is sign him up for sickle, which she did many times. Unless you have more questions, it appears my time is out. And I would just request that the court affirm the lower court's decision. Thank you, Your Honors. Thank you. Counsel, we'll give you 30 seconds to say something in rebuttal if you'd like. Very quickly, Your Honor. He was not seen 11 times during the relevant time frame. Four of those visits preceded his having the tooth extracted, and five of them involved treatment or post dated when he finally received treatment. He was seen twice during the nine-month period. With respect to what happened with tooth number 32 and whether there was a fragment or not, you can reach the conclusion that there was not a fragment only by disregarding his testimony. On summary judgment, that is inappropriate. Credibility determinations are to be left to the trier of fact on a summary judgment motion. On his testimony, she's the one that took it out. I mean, I never had a dental receptionist take pieces of my teeth out. Oh, Your Honor, I think it's Dr. Marquez who took it out. Dr. Marquez took it out? Yes, on August 6th. I misread that then. Yes. Thank you. I thank you. 30 seconds have passed. It goes so fast. Thank you, Your Honor. All right. Case number 0556531, Finley v. Parker, is now submitted.
judges: Trott, Smith, Shadur